IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DANIEL LEE NEWMAN, Plaintiff, | ) | |
| v. | ) | Civil Action No. 04-1163 |
| DOLLAR BANK, Defendant. | ) | |

MEMORANDUM and ORDER

Gary L. Lancaster,
District Judge. March 30, 2006

This is an action in employment discrimination. Plaintiff, Daniel Lee Newman, alleges that defendant, Dollar Bank, denied him training and a promotion based on his gender and fired him when he complained of this allegedly discriminatory conduct, in violation of Title VII of the Civil Rights Act of 1964 and the Pennsylvania Human Relations Act.[1] Plaintiff seeks monetary damages. Defendant has filed a motion for summary judgment [doc. no. 10] arguing that plaintiff lacks the evidence needed to support his discrimination and retaliation claims. Defendant also contends that it had legitimate non-discriminatory reasons for its employment decisions, namely plaintiff's poor performance and insubordination.

For the reasons set forth below, the motion will be granted.

---

1 Claims under the PHRA are interpreted under the same standards as Title VII claims. Kelly v. Drexel Univ., 94 F.3d 102, 103 (3d Cir. 1996).

I. BACKGROUND

Unless otherwise specifically indicated, the following material facts are undisputed. Other material facts will be discussed in the memorandum in context.

Plaintiff, a white male, was hired to work as a teller at Dollar Bank's Washington, Pennsylvania branch in October of 2001. Plaintiff wanted a promotion to Customer Service Assistant ("CSA"), and to that end participated in CSA training classes in the spring/summer of 2002. At the time of plaintiff's CSA classroom training, plaintiff's CSA trainer, Dee Sharkey, informed his branch supervisors, Tom Weaver and Marcy Kusich, that plaintiff was not taking the training seriously and was not committed to the program. Ms. Sharkey spoke with plaintiff on June 4, 2002 regarding her concerns with his commitment to the program.

Theresa Killinger was hired after plaintiff. She attended CSA classes in the winter of 2003 and was identified by Ms. Sharkey as a very committed student with a sense of leadership. Ms. Killinger was promoted to CSA in the Washington branch in May of 2003. Plaintiff had also applied for that position. At the time he applied, plaintiff was in his second three-month salary deferral period. A salary deferral occurs when an employee receives a poor performance review. In both his December 2002 and March 2003 reviews plaintiff was rated as "needs

improvement". There is only one performance rating below "needs improvement", that being "unacceptable". According to the Dollar Bank Employee Guide, promotions are directly linked to job performance and performance review ratings.

Plaintiff's monthly Teller Balancing Reviews show that, starting in September of 2002, plaintiff was repeatedly counseled regarding his poor attendance, low transaction per hour rate, and failure to complete the scripts required to advance to platform (on-the-job computer) training. Although plaintiff contends that the scripts were wrongfully withheld from him by management, there is no dispute that once plaintiff was given the scripts it took him more than three months to perform any of them for his managers, as he was required to do. Ms. Killinger's Teller Balancing Reviews reflect no counseling about these, or any other, matters.

Plaintiff applied for another CSA position in September of 2003, but was not promoted. The job, located at the Greengate, Pennsylvania branch, was given to a man. After plaintiff was passed over for the Greengate position, he filed a formal complaint with Dollar Bank's human resources department on October 12, 2003. He claimed that he was being discriminated against because of his gender. Plaintiff had previously complained informally to human resources regarding what he believed to be "unfair" treatment in the progress of his

training. He did not identify his gender as a cause of the disparate treatment. The human resources representative told plaintiff to raise the issue with his branch manager. Plaintiff did so and in explaining the alleged "unfair" treatment to Mr. Weaver, told Mr. Weaver that Ms. Kusich had told him that women were better at organizing than men. Plaintiff now also claims that Ms. Kusich acted rudely and derogatorily toward him, ignored his requests for repair or replacement of office equipment, gave preference in training to members of the Leadership Development Program, and gave one on one training to Ms. Killinger that was not available to him.

On October 20, 2003, several employees committed to writing their unfavorable work interactions with plaintiff. One fellow employee stated that plaintiff told her that he hated Dollar Bank and that his manager had "no backbone". Another stated that plaintiff talked down to her and tried to make her time at the branch as unpleasant as possible. Although plaintiff disputes the truth of these letters, he also readily admits that he has no information to suggest, or to support any allegation, that Dollar Bank coerced its employees to prepare these letters and submit written lies about him to their employer. On October 21, 2003, Mr. Weaver recommended that plaintiff be terminated due to the reported conduct, which was in violation of Dollar Bank's Code of Ethics. Plaintiff admits that Mr. Weaver did not know that

plaintiff had registered a complaint of gender discrimination with human resources when he recommended that plaintiff be terminated.

II. STANDARD OF REVIEW

Fed.R.Civ.P. 56(c) provides that summary judgment may be granted if, drawing all inferences in favor of the non-moving party, "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." To defeat summary judgment, the non-moving party cannot rest on the pleadings, but rather must go beyond the pleadings and present "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

The mere existence of some factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. A dispute over those facts that might affect the outcome of the suit under the governing substantive law, i.e. the material facts, however, will preclude the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Similarly, summary judgment is improper so long as the dispute over the material facts is genuine. Id. In determining whether the dispute is genuine, the court's

function is not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the non-moving party. Id. at 248-49. Under these standards, the non-moving party must do more than show there is "some metaphysical doubt" as to the material facts. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

Although inferences must be drawn in favor of the non-moving party, "an inference based upon speculation or conjecture does not create a material factual dispute sufficient to defeat entry of summary judgment." Robertson v. Allied Signal, Inc., 914 F.2d 360, 382 n.12 (3d Cir. 1990). Similarly, the non-moving party cannot rely on unsupported assertions, speculation, or conclusory allegations to avoid a motion for summary judgment. Williams v. Borough of W. Chester, 891 F.2d 458, 460 (3d Cir. 1989) (citing Celotex v. Catrett, 477 U.S. 317, 324 (1986)).

The non-moving party has the burden of producing evidence to establish each element of his claim. Celotex, 477 U.S. at 322-23. The non-movant must show more than "[t]he mere existence of a scintilla of evidence" for elements on which she bears the burden of production. Anderson, 477 U.S. at 252. Thus, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue

for trial.'" Matsushita Elec., 475 U.S. at 587 (citations omitted).

In summary, the inquiry under a Rule 56 motion is whether the evidence of record presents a genuine dispute over material facts so as to require submission of the matter to a jury for resolution of that factual dispute or whether the evidence is so one-sided that the movant must prevail as a matter of law because no reasonable jury could return a verdict in her favor. It is on this standard that the court has reviewed defendant's motion and plaintiff's response thereto.

## III. DISCUSSION

### A. Reverse Discrimination Claim

Plaintiff claims that he was discriminated against because of his gender. Specifically, he contends that he was denied promotion to the CSA position because he is a man. Plaintiff also contends that his supervisor, Ms. Kusich, denied him training and office supplies, and on one occasion remarked to him that women were better suited for organizational tasks than men. Defendant denies these claims, and argues that plaintiff can produce no evidence from which a reasonable jury could conclude that he was treated differently because of his gender. Rather, defendant contends that plaintiff was a poor employee, with a history of attendance, commitment, and performance problems, who

failed to adequately fulfill his training assignments so that he could advance to the next level with the bank.

A modified burden shifting analysis applies to cases of reverse discrimination. A plaintiff must first establish a prima facia case. The Court of Appeals for the Third Circuit has stated that "all that should be required to establish a prima facia case in the context of 'reverse discrimination' is for the plaintiff to present sufficient evidence to allow a fact finder to conclude that the employer is treating some people less favorably than others based upon a trait that is protected under Title VII". Iadimarco v. Runyon, 190 F.3d 151, 161 (3d Cir. 1999). Once plaintiff has met his burden, the defendant must articulate a legitimate nondiscriminatory reason for the action. Id. at 166. Plaintiff then has the opportunity to prove, by a preponderance of the evidence, that this reason is merely pretextual and that the true reason for the action was discrimination. Id. In order "[t]o discredit the employer's proffered reason,...the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent." Fuentes v. Perskie, 32 F.3d 759, 765 (3d Cir. 1994).

Based on the evidence of record, we conclude that no reasonable jury could find that Dollar Bank discriminated against

plaintiff because of his gender. Plaintiff's evidence of gender bias or discrimination consists of the fact that a woman got a promotion that he applied for,[2] his "feeling" that his gender was the reason that Ms. Kusich denied him training, office equipment, and assistance, and treated him rudely, and Ms. Kusich's alleged comment that woman are better organizers than men.

The fact that a woman received a promotion instead of a man does not, alone, establish gender discrimination. Especially, where, as here, the promotion was given to a superior employee without the performance problems that plagued plaintiff. Plaintiff's "feeling" that Ms. Kusich treated him differently because he is a man amounts to no more than speculation or conjecture, which is insufficient to defeat a motion for summary judgement. Moreover, plaintiff has failed to produce facts to support his allegation that he was denied training, equipment, or assistance that was offered to women.

As to Ms. Kusich's isolated comment that women are better organizers than men, "stray remarks by non-decision makers...are inadequate to support an inference of discrimination by the employer." <u>Gomez v. Allegheny Health Services, Inc.</u>, 71 F.3d 1079, 1085 (3d Cir. 1995). Plaintiff has provided no evidence

---

[2] Although plaintiff alleged that a woman was promoted to CSA at the Greengate branch, defendant has produced uncontradicted evidence that a man received that promotion.

that Ms. Kusich made the decision to promote Ms. Killinger to CSA at the Washington branch, rather than plaintiff, or to what extent she made decisions regarding training or office supplies. Regardless, even if we assume that Ms. Kusich was the decision maker on these issues, a reasonable jury could not conclude that this single comment is sufficient evidence from which to conclude that each of the alleged adverse actions that were taken during the course of plaintiff's employment were gender motivated.

In fact, the record establishes that plaintiff himself, at the time of the events and more recently, did not believe that gender was a motivating factor in his treatment at Dollar Bank. Plaintiff stated that he felt his training was being pushed aside because new hires in the Leadership Development Program were given preference. When asked, plaintiff could not say why Ms. Killinger was provided better training than he was. And plaintiff has never actually alleged, let alone provided evidence, that Ms. Kusich provided superior training, manager assistance, or office equipment to women. Rather, he stated that Ms. Kusich treated him badly and "simply favored" other employees over him.

Even were we to find that plaintiff had presented adequate evidence in support of his prima facia case, defendant has articulated a legitimate non-discriminatory reason for its actions -- that plaintiff was an inferior employee who failed to

follow through on his training assignments -- which plaintiff is unable to discredit. The evidence of record provides ample support for defendant's position.

Plaintiff's monthly Teller Balancing Reviews, performance reviews, and other Dollar Bank documents demonstrate plaintiff's poor performance. Plaintiff was on salary deferral due to poor performance at the time Ms. Killinger was promoted to CSA. Regardless of whether this made plaintiff absolutely ineligible for a promotion, there is no dispute that it was relevant to promotion decisions. According to the Dollar Bank Employee Guide, promotions were directly related to job performance and performance review ratings. A reasonable jury would conclude that an employee with two consecutive poor performance ratings would not be given preference for a promotion over an employee with no such issues, who excelled at her training.

Plaintiff received criticism regarding his commitment to advancement during CSA training. Contemporaneous notes from plaintiff's CSA trainer reflect that plaintiff was not committed to his training. Plaintiff's monthly Teller Balancing Reviews reflect that management routinely discussed the progress of plaintiff's training with him. They also show that plaintiff was failing to follow through on obtaining and learning his scripts in a timely fashion. Management counseled plaintiff on his absenteeism several times. Management counseled plaintiff on

needing to improve his transactions per hour several times. Each of these reasons explains why plaintiff was not promoted, and a superior employee, Ms. Killinger, was. They also offer an explanation as to why plaintiff's training schedule may have differed from other employees's.

Plaintiff has presented nothing more than conjecture and assumptions that he was purposefully denied promotions, training, and office assistance because he is a man. He has presented no evidence of "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in Dollar Bank's proffered legitimate reason for its actions such that a reasonable trier of fact could infer that gender discrimination was the real motivation behind defendant's actions.

In summary, there is no evidence from which a reasonable jury could conclude that plaintiff was treated differently in terms of promotions, training, or any other workplace conditions, because of his gender. Even assuming that plaintiff could establish a prima facia case, which we doubt, plaintiff can nonetheless present no evidence that defendant's proffered legitimate non-discriminatory reason is pretextual, and that the true reason for the actions was discrimination. Accordingly, defendant's motion for summary judgment on plaintiff's gender discrimination claim will be granted.

B. Retaliation Claim

Plaintiff claims that he was discharged in retaliation for filing a complaint of gender discrimination with Dollar Bank's human resources department. Specifically, plaintiff contends that he was fired only eleven days after he filed his complaint. Plaintiff contends that the letters from his co-workers summarizing their experiences with plaintiff's poor attitude toward Dollar Bank and its management were falsified and coerced. Defendant denies that the co-worker letters were coerced or falsified. Defendant claims that it fired plaintiff based on numerous oral and written reports it had received regarding plaintiff's poor attitude and lack of professionalism.

In order to establish a retaliation claim under Title VII, a plaintiff must prove three elements: (1) he engaged in activity protected by Title VII; (2) his employer acted adversely against him; and (3) a causal link existed between the protected activity and the loss of his job. Charlton v. Paramus Bd. of Educ., 25 F.3d 194, 201 (3d Cir. 1994); Jalil v. Avdel Corp., 873 F.2d 701, 708 (3d Cir. 1989). There is no dispute regarding the first two elements. The third element is in dispute.

Plaintiff argues that the timing of his discharge alone raises an inference of a causal link. Plaintiff filed his complaint with human resources on October 12, 2003. The letters from his co-workers are all dated around October 20, 2003. Mr.

Weaver's memorandum to file recommending termination is dated October 21, 2003. Plaintiff was notified of his termination on October 22, 2003.

We find that although there is a close temporal link between plaintiff's complaint and his firing, the timing cannot raise an inference of a causal link in this case. In Jalil the employee was discharged two days after filing his Equal Employment Opportunity Commission ("EEOC") complaint. While the Court of Appeals held that the "timing of the discharge in relation to Jalil's EEOC complaint may suggest discriminatory motives," it stopped short of creating an inference based upon timing alone. Jalil, 873 F.2d at 709; see also Quiroga v. Hasbro, Inc., 934 F.2d 497 (3d Cir. 1991). Although timing may be evidence of a discriminatory motive it alone is generally insufficient to prove retaliatory causation. Robinson v. City of Pittsburgh, 120 F.3d 1286, 1302 (3d Cir. 1997).

When the timing is considered in conjunction with other evidence in this case, plaintiff is unable to satisfy his burden to establish a causal link between his discrimination complaint and termination. Plaintiff acknowledges that Mr. Weaver, the individual responsible for recommending that he be fired, had no knowledge that plaintiff had filed a charge of discrimination with Dollar Bank's human resources department when he made the termination recommendation. Based on this admission, no

reasonable jury could find that Mr. Weaver was acting in retaliation for plaintiff's having filed a charge of discrimination about which he had no knowledge.

Regardless, even if plaintiff could prove his prima facia case, which he has not, plaintiff cannot fulfill his burden to discredit defendant's legitimate non-discriminatory reason for firing him, or otherwise prove that discrimination was more likely than not the motivating cause of his termination. Fuentes, 32 F.3d at 764-65.

Defendant contends that it fired plaintiff for violation of its Code of Ethics. As an initial matter, plaintiff acknowledges that the conduct set forth in the letters, if true, would be grounds for dismissal. Although plaintiff contends that his co-workers were coerced into drafting the letters and that the allegations against him in the letters are false, he acknowledges that he has no evidence that would prove his theory. Plaintiff simply argues that because the letters were all written on the same date, at the obvious request of management, they must have been coerced and falsified. However, such speculations and assumptions are insufficient at this point in the litigation. The fact that the letters were written at the request of management does not raise the inference that the proffered reason for the termination was a pretext for gender discrimination.

In summary, there is no evidence from which a reasonable jury could conclude that plaintiff was terminated in retaliation for reporting alleged instances of gender discrimination to Dollar Bank's human resources department. Even assuming that timing alone could support a prima facia case, which we have found it cannot in this case, plaintiff can nonetheless present no evidence that defendant's proffered legitimate non-discriminatory reason is pretextual, and that the true reason for the action was discrimination. Although plaintiff personally believes that his co-workers's letters were falsified, he can present no evidence to support such a theory. At the summary judgment stage, theories and bald assertions are insufficient. Accordingly, defendant's motion for summary judgment on plaintiff's retaliation claim will be granted.

## IV. CONCLUSION

For the foregoing reasons, we conclude that no reasonable jury could find in favor of plaintiff on either his discrimination or retaliation claim. As such, it is appropriate to enter summary judgement in defendant's favor on all counts. An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DANIEL LEE NEWMAN,<br>Plaintiff,<br><br>v.<br><br>DOLLAR BANK,<br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 04-1163 |

ORDER

Therefore, this 30th day of March, 2006, IT IS HEREBY ORDERED that defendant's motion for summary judgment [doc. no. 10] is GRANTED.

IT IS FURTHER ORDERED that judgment shall be entered in favor of defendant on all claims and that the Clerk of Courts shall mark this case closed.

BY THE COURT:

______________________, J.

cc: All Counsel of Record